# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| BUILDERS INSULATION OF TENNESSEE, LLC, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 2:17-cv-02668-TLP-tmp |
| SOUTHERN ENERGY SOLUTIONS, ) THOMAS WALKER DAVIS, and ) TERI LEIGH DAVIS, ) ) | |
| Defendants. ) | |

## ORDER DENYING DEFENDANTS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, Southern Energy Solutions, Thom Davis, and Teri Davis,[1] move for Partial Summary Judgment. (ECF No. 77.) For the reasons below, the Court DENIES the motion.

## **BACKGROUND**

**I. Procedural History**

This case arises out of Defendant Thom Davis's employment with Plaintiff Builders Insulation of Tennessee, LLC ("Builders") and the business relationship between Plaintiff and Defendant Southern Energy Solutions ("Defendant SES" or "SES"). Defendant SES is a Tennessee general partnership, with Defendants Thom and Teri Davis acting as the general partners. (ECF Nos. 1 at PageID 2; 101 at PageID 1434.) In September 2017, Plaintiff sued Defendants claiming conversion, actual fraud/intentional misrepresentation and negligent

---

[1] This Court will refer to these parties together as "Defendants" but, because the Davises share their last name, if referenced individually, the Court will use their first names.

misrepresentation against the Davises. (*See* ECF No. 1.) They asserted also breach of employee's fiduciary duty, tortious interference with business relationships, improper interference with business prospects, breach of the employment contract, unjust enrichment, and violations of the implied duty of good faith and fair dealing against Thom. (*Id.*) Defendants countersued alleging unjust enrichment, breach of the employment contract, tortious interference with existing business relationships, and promissory estoppel against Plaintiff. (ECF No. 33 at PageID 125–30.) Earlier, the Court dismissed Defendants' counterclaims for tortious interference with existing business relationships and promissory estoppel under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 61.)

Defendants then moved for partial summary judgment, (ECF No. 77), to which Plaintiff timely responded, (ECF Nos. 100–01). Plaintiff amended its complaint adding a claim for breach of contract, (ECF No. 103). The Court held the amendment does not moot the earlier-filed motion for summary judgment. (ECF No. 96.) This motion requests that the Court (1) limit Plaintiff's conversion claim to the value of two laptop computers and two iPhones and (2) dismiss all remaining claims. (ECF No. 77 at PageID 321.)

## II.     Statement of Undisputed Facts

The Court takes these facts from Defendants' Statement of Undisputed Material Facts, (ECF No. 77-1 at PageID 322–30), Plaintiff's Response to Defendants' Statement of Undisputed Material Facts and Statement of Additional Facts Pursuant to LR 56.1(b)(3), (ECF No. 101 at PageID 1425–37), and Defendants' Response to Plaintiff's Additional Undisputed Material Facts, (ECF No. 106 at PageID 1557–63).

Plaintiff is a business serving as the Memphis branch of its parent company, CWI Holdings. (ECF Nos. 77-1 at PageID 323; 77-2 at PageID 341.) Each branch office of Builders

is its own separate business entity, all owned by CWI Holdings. (ECF Nos. 77-1 at PageID 322; 77-2 at PageID 336.) David Weber, national sales director of CWI Holdings, hired Thom as the Memphis branch manager in or around August 2015. (ECF Nos. 77-1 at PageID 323; 77-2 at PageID 348.) Plaintiff employed Thom as an at-will employee from September 2015 through July 2017 and there was no written employment contract. (ECF Nos. 77-1 at PageID 322; 77-2 at PageID 333.) Among other things, the branch manager oversees sales, production, employees, inventory, scheduling, billing, and invoicing. (ECF Nos. 77-1 at PageID 323; 77-2 at PageID 350, 352.)

Weber testified that Memphis was one of the "poorest performing branches," and his goal was to organize it and raise its revenue to around $1.2 million in 2016—double the revenue of the branch under its previous manager. (ECF Nos. 77-1 at PageID 323–24; 77-2 at PageID 360, 362.) Weber testified that he viewed Thom's hiring as a "team approach" by which Thom would act as Plaintiff's paid employee and Teri would deliver behind–the–scenes support. (ECF Nos. 77-1 at PageID 324; 77-2 at PageID 364–65.) Upon his hiring, Thom acted as both a full-time employee of Builders and the corporate representative of Defendant SES. (ECF Nos. 101 at 1434; 101-6 at PageID 1503.)

Weber knew of SES and that it was in the business of energy efficiency and testing. (ECF Nos. 77-1 at PageID 324; 77-2 at PageID 367–68.) Builders often performed insulation work on projects with Defendant SES. (ECF Nos. 101 at PageID 1435; 77-4 at PageID 500.) From their agreement, Weber also understood that Builders would provide insulation services, and that Defendant SES would provide energy certification services. (ECF Nos. 77-1 at PageID 325; 77-2 at PageID 386–87.) Weber testified that bundling services with Defendant SES would

allow them to bring in new customers and drum up additional business. (ECF Nos. 77-1 at PageID 325; 77-2 at PageID 393.)

Defendant SES discounted its own services to sell the bundled services. (ECF Nos. 77-1 at PageID 325; 77-2 at PageID 403–05.) Sometimes Defendant SES embedded its services in the final price quoted to customers. (ECF Nos. 77-1 at PageID 326; 77-2 at PageID 409–10.) As part of their agreement, Plaintiff was to receive 100% of the payment for all insulation services, and if Plaintiff marked up Defendant SES' invoices, Plaintiff would be due the amount of that markup. (ECF Nos. 77-1 at PageID 329; 77-3 at PageID 474–77.) They only agreed to "add-on" services Plaintiff did not already offer—energy audits, blower door tests, and HERS ratings. (ECF Nos 77-1 at PageID 329; 77-3 at PageID 479–82.) Defendant SES made a profit from its jobs with Builders. (ECF Nos. 101 at PageID 1435; ECF No. 100-4 at PageID 1407.)

To keep its business records like proposals, projects, scheduling, and invoicing, Builders uses a Microsoft Access database hosted on CITRIX. (ECF Nos. 77-1 at PageID 324; 77-2 at PageID 374.) Weber knew that Defendant SES was a customer in CITRIX, although the parties dispute when Weber learned this. (ECF Nos. 77-1 at PageID 324; 77-2 at PageID 378.) Weber testified that he believed jobs on a statement to Defendant SES were binding contracts between Builders and Defendant SES. (ECF Nos. 77-1 at PageID 326; 77-3 at PageID 420–21, 423–30.) Thom, as branch manager, was responsible for keeping the books and records, and recording all labor records into CITRIX. (ECF Nos. 101 at PageID 1434; 101-3 at PageID 1459–62.) He testified that he did not give any written bid proposals from Builders to Defendant SES. (ECF Nos. 101 at PageID 1434; 76-2 at PageID 286–88.) In fact, Thom testified that Teri orally negotiated all business dealings between Builders and Defendant SES. (ECF Nos. 101 at PageID 1434; ECF No. 101-4 at PageID 1482–1482.)

Plaintiff fired Thom around July 26, 2017. (ECF Nos. 77-1 at PageID 328; 77-3 at PageID 458.) The Memphis branch continued to operate for a short time. But Plaintiff closed the office in early 2018 because it was more profitable to focus in other markets. (ECF Nos. 77-1 at PageID 327–28; 77-2 at PageID 453, 455–56.) Plaintiff makes many claims against Defendants based on Thom's and Defendant SES' business relationship with Plaintiff.

For example, Plaintiff issued two Dell laptops and two iPhones to Thom. Thom did not return these items upon his termination. (ECF Nos. 77-1 at PageID 328; 77-3 at PageID 460; 101 at PageID 1435; 101-1 at PageID 1439.) According to the Davises, they put one of the laptops in a closet in their home and their son later used it and replaced the hard drive. (ECF Nos. 101 at PageID 1436; 76-2 at PageID 285.) But they cannot find the other laptop. (*Id.*) Thom used personal computers for conducting business. (ECF Nos. 101 at PageID 1436; 101-4 at PageID 1467; 101-5 at PageID 1492.)

To illustrate, Thom used an ASUS laptop to conduct business but testified that he threw that laptop against a wall. (ECF Nos. 101 at PageID 1436; 101-4 at PageID 1467.) None of the other personal computers Thom purportedly used to conduct business currently contain any relevant data because he deleted all Builders records in his possession after his termination. (ECF Nos. 101 at PageID 1436; 101-4 at PageID 1467; 101-5 at PageID 1492.)

What is more, Defendants switched domain hosting and later lost electronic access for accounts ending in "bldrs-insul.com" and "southernenergy.com." (ECF Nos. 101 at PageID 1436; 101-5 at PageID 1490–91.) And so there are no SES business records and bank account deposit records that currently exist. (ECF Nos. 101 at PageID 1436; 76-3 at PageID 305.) Defendant SES maintains a bank account at Independent Bank ending in #6560, but Plaintiff has been unable to obtain deposit records throughout discovery. (ECF Nos. 101 at PageID 1436;

101-5 at PageID 1487.) Any SES tax returns and financial records that may exist are purportedly located on an ASUS laptop in Defendants' attorney's possession. (ECF Nos. 101 at PageID 1436–37; 101-4 at PageID 1469.) Yet Thom testified that he did not save any documents or data before turning over that laptop. (*Id.*)

Plaintiff claims also that Defendants owe $90,414 in outstanding bills for jobs Defendant SES performed. (ECF Nos. 77-1 at PageID 328–29; 77-3 at PageID 471–72.) Plaintiff also alleges that Defendants engaged in self-dealing by improperly marking up invoices for monetary gain. (ECF Nos. 77-1 at PageID 328; 100-3 at PageID 1396; 100-4 at PageID 1407.) For example, Plaintiff points to an SES bid proposal for the "McKenzie Residence" quoting $5,839.74 for labor and materials which included no invoice. SES then sent an invoice for this job to Builders for $4,995. (ECF Nos. 101 at PageID 1435; 100-7 at PageID 1418–19.)

Finally, Plaintiff claims also that the Davises defrauded Plaintiff by inventing a fictional employee by the name of "Tom Walker," who purportedly worked around 633.75 hours between January 6, 2017 and July 7, 2017 and Plaintiff paid about $18,524.09 in gross wages. (ECF Nos. 77-1 at PageID 329–30; 77-3 at PageID 492.) Thom alleges that he discovered "Tom Walker" was his son, Chris Davis, after submitting a work order for employee payment. (ECF Nos. 101 at PageID 1434; 101-4 at PageID 1472–73, 1476.) But he allowed "Tom Walker" to remain on Plaintiff's payroll. (*Id.*)

## STANDARD OF REVIEW

The Court begins its analysis of this motion by consulting Federal Rule of Civil Procedure 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material for purposes of summary judgment if proof of

that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (internal quotation marks omitted). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp v. Catrett,* 477 U.S. 317, 323 (1986)). "Mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Mosholder*, 679 F.3d at 448–49 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In response, the non-moving party "may not rest upon its mere allegations." *Great West Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 960 (S.D. Ohio 2009). The non-moving party "must produce evidence that results in a conflict of material fact to be resolved by a jury[,]" and the Court "must afford all reasonable inferences, and construe the evidence, in the light most favorable to the non-moving party." *Cox v. Ky. Dept of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "The non-moving party must present 'significant probative evidence' to show that there is more than 'some metaphysical doubt as to the material facts.'" *Id.* (quoting *Moore v. Philip Morris Co.*, 8 F.3d 335, 339–40 (6th Cir. 1993)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (citing *Celotex Corp.*, 477 U.S. at 323).

**DISCUSSION**

I. **Conversion**

Plaintiff alleges Defendants converted the following personal property: (1) two Dell laptops, (2) two iPhones; (3) a pickup truck Plaintiff issued to Thom when it hired him; (4) five trucks assigned to the Memphis branch of Builders; (5) "all accounts receivable from any source for labor or materials [Plaintiff] provided for the improvement of any project for which Defendants received and such funds"; (6) inventory and proceeds in any project for which Defendants received payments not sent to Plaintiff; and (7) fuel cards. (ECF No. 103 at PageID 1508–09.) Defendants contend they are entitled to partial summary judgment on several aspects of this claim limiting its scope to two laptop computers and two iPhones allegedly destroyed by Defendants. Defendants argue that Plaintiff's alleged loss of $90,414 in accounts receivable is not a proper common law conversion claim. (ECF No. 77-4 at PageID 503.) As discussed above, Thom did not return the two Dell laptop computers and two iPhones upon his termination. *See supra* at p. 4.

In Tennessee, conversion is an intentional tort defined as "the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property." *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009). Thus, the elements necessary to establish a prima facie claim for conversion include "(1) an appropriation of another's property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel." *White v. Empire Exp., Inc.*, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012). "[T]he general rule is that money is an intangible and therefore not subject to a claim for conversion." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty.*

*Dev. Corp.*, 387 S.W.3d 525, 554 (Tenn. Ct. App. 2012) (quoting 90 C.J.S. Trover and Conversion § 16 (2019)). That said, "[i]dentifiable funds are deemed a chattel for the purposes of conversion, and conversion may be established where a party shows ownership or the right to possess specific, identifiable money." *Id.*

Though Defendants argue accounts receivable cannot support a claim for conversion, (ECF No. 77-4 at PageID 505), Plaintiff counters the accounts receivable are identifiable funds which properly support a claim for conversion, (ECF Nos. 100 at PageID 1352; 100-2 at PageID 1382–83). Plaintiff has identified at least $90,414 in outstanding accounts receivable to which it is allegedly entitled. (ECF No. 100-1.) Defendant SES listed these accounts in its account statement with Plaintiff. (*Id.*)

With that in mind, Plaintiff contends it cannot determine whether that money exists in a discrete bank account owned by Defendant SES allowing identification of specific existing money because no bank account records are available for its account ending in #6560. So there is a dispute as to material facts about what action Defendants took allegedly to convert the money in Plaintiff's accounts receivable for their own purposes and whether these purported actions constitute the appropriation of Plaintiff's property.

This is an unresolved question of fact. Summary judgment is thus inappropriate as to Plaintiff's claims for conversion and Defendants motion is DENIED.

II.     **Intentional and Negligent Misrepresentation**

Plaintiff alleges the Davises defrauded it by inventing "Tom Walker," a fictional employee and then billing falsely as though the fictional employee worked on jobs. (ECF No. 103 at PageID 1510–15.) Defendants assert that it was an innocent misunderstanding. Thom testified that they mistakenly billed for work by "Tom Walker" when they meant to identify their

son Chris Davis. (ECF No. 100-4 at PageID 1401–05.) Even assuming this is true, Plaintiff, alternatively, argues that the Davises negligently misrepresented the existence of "Tom Walker." (ECF No. 103 at PageID 1510–13.) Defendants claim they are entitled to summary judgment because Plaintiff cannot prove it suffered any damages as a result of the alleged misrepresentations. (ECF No. 77-4 at PageID 505.) The Court must consider Tennessee law.

In Tennessee, to prove intentional misrepresentation a plaintiff must show (1) the defendant made a representation of fact; (2) the representation was false when made; (3) the fact was material; (4) the defendant knew the representation was false; (5) the plaintiff did not know the representation was false; (6) the plaintiff justifiably relied on it; and (7) the plaintiff sustained damages as a result. *Id.* at 343. Similarly, under Tennessee law, "[o]ne who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care of competence in obtaining or communicating the information." *Bennett v. Trevecca Nazarene Univ.*, 216 S.W.3d 293, 301 (Tenn. 2007) (quoting Restatement (Second) of Torts § 552).

While Plaintiff paid roughly $18,500 for work done by "Tom Walker," the parties dispute whether Defendants' son Chris in fact performed any work justifying payment. Defendants argue Chris, under the pseudonym "Tom Walker," worked the 633.75 hours for which Plaintiff paid and therefore Plaintiff suffered no harm. (ECF Nos. 77-4 at PageID 507; 77-3 at PageID 496.) But Plaintiff contends there is no way to confirm whether Chris performed any work for Plaintiff or whether Thom, who submitted work orders for employee payment, fraudulently listed charges to receive payment for work not done. (ECF No. 100 at PageID 1354.)

10

To that end, Plaintiff contends no records exist showing that Chris ever performed any work on its behalf, and Thom testified that he unofficially employed Chris and paid him directly before he ever thought of the pseudonym "Tom Walker." (ECF Nos. 101 at PageID 1433; 101-4 at PageID 1475.) The bottom line is that the parties disagree whether Chris performed any work and if that work justified charging the amount Defendants charged here. Defendants have therefore failed to show there is no dispute as to a material fact which would entitle them to judgment as a matter of law. So Defendants' motion for summary judgment as to Plaintiff's intentional misrepresentation and negligent misrepresentation claims is DENIED.

### III. Tortious Interference with Business Relationships and Improper Interference with Business Prospects

Plaintiff alleges that the Davises caused breaches and terminations of its existing and prospective business relationships by stealing customers for the benefit of SES. (ECF No. 103 at PageID 1515–16.) In contrast, Defendants contend they are entitled to summary judgment because Plaintiff cannot point to any customers or prospective customers who breached their contracts, ceased doing business, or declined to do business with Plaintiff. (ECF No. 77-4 at PageID 508.) Tennessee law governs this claim too.

A claim for tortious interference with a business relationship has five elements:

(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach of termination of the business relationship; (4) the defendant's improper motive or improper means; (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (emphasis removed and citation omitted). To prove improper interference, also called "unfair competition," one must show "(1) the defendant engaged in conduct that amounts to a recognized tort and (2) that tort deprives the plaintiff of customers or prospects." *J.T. Shannon Lumber Co. v. Barrett*, No.

11

2:08-cv-2847-JPM-cgc, 2010 WL 3069818 at *13 (W.D. Tenn. Aug. 4, 2010) (citing *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 216 (Tenn. Ct. App. 2004)).

The parties here dispute whether Thom's employment was for bringing new customers to Builders or whether they intended for Builders to gain revenue by offering materials and labor to Defendant SES' customers. Weber testified in his deposition as a representative of Plaintiff, that he believed Plaintiff would be the main supplier of insulation. (ECF No. 100 at PageID 1355.) But Thom testified that Defendant SES would bring customers to Plaintiff. (ECF No. 100-2 at PageID 1379.) Defendants now argue that Builders merely provided materials and labor to Defendant SES' customers. (ECF No. 77-1 at PageID 325.) This is a dispute of material fact because Plaintiff's claim depends in part on determining the owner of the customer accounts. And so Defendants' motion for summary judgment as to Plaintiff's claims for tortious interference with business relationships and improper interference with business prospects is DENIED.

## IV. Employment Contract Claims

### A. Breach of Fiduciary Duty

In like manner, Plaintiff alleges Thom breached his fiduciary duty as an employee by providing it false information; making misrepresentations; converting its property; and using its equipment, inventory, trucks, fuel cards, and related items for the benefit of Defendant SES. (*Id.* at 1514.) Defendants assert summary judgment is warranted because Weber knew that Defendant SES acted as a subcontractor and Weber ratified that relationship. For that reason, says Defendants, Plaintiff cannot now claim improper competition just because Defendants benefitted from SES's being a subcontractor. (ECF No. 77-4 at PageID 509–10.) We look again to Tennessee law.

Under Tennessee law, an employee owes his employer a fiduciary duty of loyalty. "An employee must act solely for the benefit of the employer in matters within the scope of his employment. The employee must not engage in conduct that is adverse to the employer's interests." *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003) (internal quotation marks omitted). This duty of loyalty applies whether an employee is at-will or has an employment contract. *Ram Tool & Supply Co., Inc. v. HD Supple Construction Supply Ltd.*, No. M2013-02264-COA-R3-CV, 2016 WL 4008718 at *5 (Tenn. Ct. App. July 1, 2016).

The dispute here is whether Plaintiff agreed to Defendant SES functioning as a subcontractor. Although Weber testified that he and the Davises talked about bundling their services to gain new customers, Weber testified he viewed this as a mere "add on" service rather than a subcontracting relationship. (ECF Nos. 100 at PageID 1356; 100-2 at PageID 1379.) Plaintiff argues this shows that there is a dispute in material fact about whether they agreed that SES could be a subcontractor or whether Defendant acted adverse to Plaintiff's interests. (ECF No. 100 at PageID 1356.) The parties also dispute whether David Weber knew that they coded Defendant SES as a customer when they input jobs into CITRIX.

Plaintiff claims Weber is currently aware of Defendant SES acting as a customer on CITRIX, but disputes that he was aware before the invoices began. (ECF Nos. 101 at PageID 1428; 77-2 at PageID 378.) Defendants argue Weber specifically discussed with the Davises the possibility of running Builders' jobs through Defendant SES with Defendant SES acting as a customer, while Plaintiff contends that this discussion only pertained to certain projects where Builders has permit issues and Defendant SES already had permits in place. (ECF Nos. 101 at PageID 1428; 101-2 at PageID 1443–44.) The extent of Plaintiff's knowledge that Defendant

13

SES became a subcontracted "customer" of Builders is a question of fact which remains in dispute here.

Finally, the parties dispute whether Thom stopped working on behalf of Builders before his termination. Plaintiff claims that Thom not only stopped working but also, among other things, removed business furniture, business documents, business equipment, and other items and then leased space near the Memphis branch of Builders. (ECF No. 103 at PageID 1514.) Defendant insists, however, Thom continued actively working for Builders through the date of his termination. (ECF Nos. 77-1 at PageID 328; 77-3 at PageID 458.)

In sum, there are multiple disputes of material fact remaining over Plaintiff's claim for breach of fiduciary duty. So Defendants' motion for summary judgment is DENIED.

### B. Breach of Employment Contract and Violation of the Implied Duty of Good Faith and Fair Dealing

Similarly, Plaintiff alleges Thom breached his at-will employment contract by converting its property, defrauding it, making negligent misrepresentations, breaching his fiduciary duty as an employee, and interfering with its business relationships and business prospects. (ECF No. 103 at PageID 1516–19.) On the other hand, Defendants move for summary judgment arguing Plaintiff cannot establish breach of any express contractual terms. (ECF No. 77-4 at PageID 512.) And because Plaintiff cannot establish breach of the employment contract, Defendant argues its claim of violation of the duty of good faith and fair dealing must also fail. (*Id.* at PageID 512–13.) Once again, the Court begins with Tennessee law on this claim.

To establish a claim for breach of contract in Tennessee, a plaintiff must show (1) the existence of an enforceable contract, (2) nonperformance breaching that contract, and (3) damages caused by the breach. *C&W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007) (citing *ARC LifeMed, Inc. v. AMC–Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn.

Ct. App. 2005)). "The employer-employee relationship is contractual in nature." *Hamby v. Genesco, Inc.*, 627 S.W.2d 373, 375 (Tenn. Ct. App. 1981).

Here Defendants claim that, because there is no written contract, Plaintiff cannot show a breach of an express contractual term. This lack of evidence, Defendants assert, bars Plaintiff from recovery under a breach of contract theory. (ECF No. 77-4 at PageID 512.) While Plaintiff admits there was no written employment contract, Plaintiff counters that emails exist about Thom's employment that could inform the contractual terms of his employment. (ECF Nos. 101 at PageID 1425; 101-1 at PageID 1438.)

Even more, Plaintiff argues that Defendants knowingly created and allowed a fictitious employee to remain on the payroll after falsifying government records and misrepresenting other employment records which constitutes an overt breach of any employment contract—much less the one between these parties. (ECF No. 100 at PageID 1357.) As discussed above, the parties dispute whether Defendants helped invent the fictitious employee or just acquiesced to the falsified records after discovery. *See supra* at pp. 9–10. Possible fraudulent behavior could amount to breach of an employment contract and Plaintiff has shown a dispute about Defendants' knowledge of a fictitious employee. Defendants' knowledge of the bogus employee is a question of fact which remains in dispute. For that reason, the Court DENIES Defendants' motion for summary judgment on this issue.

## V.    Unjust Enrichment

Plaintiff alleges that Defendants received unjust enrichment by refusing to pay it for the benefit they enjoyed from the "receipt and use of the labor and materials supplied by [Plaintiff] to various projects." (ECF No. 103 at PageID 1519.) Defendants argue they are entitled to summary judgment because unjust enrichment is not a proper avenue of relief where there is an

established contract in place. (ECF No. 77-4 at PageID 513–14.) As with the other causes of action, Tennessee law governs this issue.

Under Tennessee law, to succeed on a claim for unjust enrichment, the plaintiff must show that "(1) a benefit was conferred on the defendant by the plaintiff; (2) the defendant appreciated the benefits; and (3) the defendant accepted the benefit under such circumstances that it would be inequitable to retain the benefit without paying its value to the plaintiff." *Potter's Shopping Center, Inc. v. Szekely*, 461 S.W.3d 68, 72 n.5 (Tenn. Ct. App. 2014). "The most significant requirement . . . is that the benefit to the defendant be unjust." *Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). "A benefit is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss." *Id.* (citing *Lawrence Warehouse Co. v. Twohig*, 224 F.2d 493, 498 (8th Cir. 1955)).

Plaintiff argues that, while a contract existed between it and Defendants for the outstanding invoiced amounts, that contract does not account for Defendant SES taking money for projects and then refusing to pay Plaintiff for labor or materials it provided. (ECF No. 100 at PageID 1357.) For these projects, according to Plaintiff, it has a valid unjust enrichment claim for the amounts marked up by Defendants and then invoiced to customers, for which no contract exists. (*Id.*)

Just as with the claims above, the parties dispute material facts about this claim. These disputes prevent the Court from granting summary judgment for Defendants.

First, the parties dispute whether the allegedly marked-up invoices from Defendant SES fall under the contractual terms of the parties' employment agreement. (ECF Nos. 77-4 at PageID 514; 100 at PageID 1358–59.) They also dispute whether Defendant SES, in fact, received a profit for work on these projects. In fact, there are material disputes about whether

they marked up the invoices at all. (ECF Nos. 77-4 at PageID 513–15; 100 at PageID 1358–59.) These disputes over material facts make summary judgment inappropriate and the Court DENIES Defendants' motion for summary judgment on the claim for unjust enrichment.

## VI. Constructive Trust

Plaintiff claims that it is a constructive trust beneficiary for the funds Defendant SES obtained for which Plaintiff contributed labor, insulation, and related materials. (ECF No. 103 at PageID 1519.) Defendants contend that a constructive trust is inappropriate here because Plaintiff's claims sound in breach of contract. (ECF No. 77-4 at PageID 515–16.) Tennessee law governs.

> A constructive trust in Tennessee is an equitable remedy available when a defendant:
>
> (1) obtains legal title to property in violation of some duty owed [to] the owner of the property; (2) obtains title to property by fraud, duress, or other inequitable means; (3) makes use of a confidential relationship or undue influence to obtain title to property upon more advantageous terms than would otherwise have been obtained; or (4) obtains property with notice that someone else is entitled to the property's benefits.

*Stewart v. Sewell*, 215 S.W.3d 815, 826 (Tenn. 2007) (citing *Tanner v. Tanner*, 698 S.W.2d 342, 345–46 (Tenn. 1985)). A constructive trust "may only be imposed against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, has obtained an interest in property which he ought not in equity or in good conscience retain." *Lawyers Title Ins. Corp. v. United Am. Bank*, 21 F. Supp. 2d 785, 806 (W.D. Tenn. 1998) (citing *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980)).

For starters, Defendants properly note that just failing to carry out a promise or to perform under an agreement, or even to breach a contract, does not in itself constitute fraud or abuse required to impose a constructive trust. (ECF No. 77-4 at PageID 516 (citing *Boynton v.*

17

*Headwaters, Inc.*, 2011 WL 1361549 at *5 (W.D. Tenn. Apr. 11, 2011) and *In re Property Leasing & Management, Inc.*, 46 B.R. 903, 910 (Bankr. E.D. Tenn. 1985).) All the same, this Court has already found a dispute of material fact on whether the allegedly marked-up invoices from Defendant SES fall under the contractual terms of the parties' agreement and whether they marked up invoices at all, *see supra* at pp. 14–15.

Because there is a dispute remaining about the allegedly marked-up invoices and Thom's possible manipulation of data in CITRIX, Plaintiff still has a chance to prove Defendants obtained money properly belonging to Plaintiff by fraud or abuse of confidence. This dispute of material fact remains unresolved. The remedy for these disputes remains likewise unresolved.

This open question affects the motion here. "The necessary prerequisite to [an equitable remedy] is . . . the absence of an adequate remedy at law." *Boynton*, 2011 WL 1361549 at *5 (*quoting Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962)). And because the Court did not dismiss Plaintiff's claims sounding in equity, the Court cannot foreclose an opportunity for Plaintiff to pursue constructive trust as an equitable remedy at this summary judgment stage. So the Court DENIES Defendants' motion for summary judgment as to Plaintiff's claim to impose a constructive trust.

## **CONCLUSION**

For all these reasons, the Court DENIES Defendants' Partial Motion for Summary Judgment.

**SO ORDERED**, this 18th day of September, 2019.

                                    s/Thomas L. Parker
                                    THOMAS L. PARKER
                                    UNITED STATES DISTRICT JUDGE