IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

| | |
|---|---|
| BUILDERS INSULATION OF TENNESSEE, LLC, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 17-cv-2668-TLP-tmp |
| | ) |
| SOUTHERN ENERGY SOLUTIONS, A Tennessee General Partnership; THOMAS WALKER DAVIS, a/k/a Thom Davis; and TERI LEIGH DAVIS, a/k/a Teri Davis, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

_____

ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SANCTIONS
_____

Before the court by order of reference is plaintiff Builders Insulation of Tennessee, LLC's ("Builders") Motion for Sanctions, filed on November 8, 2019. (ECF Nos. 176; 102.) On November 21, 2019, defendants Southern Energy Solutions, Thomas Davis, and Teri Davis (collectively "SES") filed a response. (ECF No. 178.) For the following reasons, the Motion for Sanctions is GRANTED in part and DENIED in part.

## I.  FINDINGS OF FACT

In September 2015, Builders and Thom Davis entered into discussions pursuant to which Builders Insulation expressed interest in hiring Thom Davis as an employee. (ECF No. 103 at 3

¶ 8.)  Thom and Teri Davis apparently informed Builders that they were winding down the operations of Southern Energy Solutions, a company run by the Davises.  (Id. at 3 ¶ 9.)  Builders subsequently hired Thom Davis, and he executed an at will employment contract with Builders.  (Id. at 3 ¶ 10.)  According to Builders, "Builders Insulation and Thom Davis agreed that Thom Davis, as an employee of Builders Insulation, would bid on projects on behalf of Builders Insulation and Builders Insulation would provide labor and materials on those various projects."  (Id. at 3 ¶ 11.)  Builders alleges that Thom and Teri Davis, contrary to their representations, continued to run SES even after Builders hired Thom Davis.  (Id. at 3 ¶ 13.)  Builders further contends that "instead of bidding on projects and providing labor and materials for the benefit of Builders Insulation, Thom Davis used Builders Insulation's trucks, equipment, inventory and tools on projects for the benefit of himself, Teri Davis and Southern Energy Solutions."  (Id.) Builders fired Thom Davis on July 26, 2017.  (ECF No. 80 at 91-92.)  Builders filed the instant lawsuit against SES on September 12, 2017.  (ECF No. 1.)

Several acrimonious disputes have arisen during the discovery process in this case. The most recent dispute, which is the subject of the instant motion, involves an All-In-One computer in SES's possession and certain bank records from SES's Independent Bank account. On March 11, 2019, Builders filed a Motion to Compel

regarding SES's failure to produce account records for SES's Independent Bank account for the time period of September 2015 to August 2017. (ECF No. 89.) District Judge Parker referred the motion to compel to the undersigned on March 28, 2019. (ECF No. 102.) At a hearing on May 1, 2019, Builders also requested that SES be required to produce a mirror image of an All-In-One computer in SES's possession. SES indicated that, after the motion was filed, SES requested the records from its bank. The bank subsequently informed SES that it could provide the records by early May. Accordingly, the undersigned directed SES to produce the bank records requested by May 15, 2019. (ECF No. 118 at 2.) While the undersigned did not require SES to produce a mirror image of its All-In-One computer, the court directed "counsel for SES [to] ensure that the All-In-One computer is searched and all relevant information contained therein produced by May 15, 2019." (Id. at 4.)

On May 20, 2019, Builders filed a Notice of Noncompliance stating that SES failed to comply with the court's May 1, 2019 order. (ECF No. 123.) According to Builders, SES produced 897 pages of documents from its search of the All-In-One computer, despite previously representing to the court that it had no such relevant documents in its possession. (Id. at 2 n.1.) In addition, the bank records produced by SES appeared to have a print date of April 19, 2019, meaning that SES was in possession of these documents prior

to hearings before the court regarding the discovery dispute on April 25 and May 1. (Id. at 2.) Builders also pointed out that the bank records produced by SES appeared to be copies rather than originals from the bank itself. (Id.) Lastly, Builders asserted that SES had produced altered checks. (Id. at 2-3.)

The day after Builders filed the Notice of Noncompliance, counsel for SES moved to withdraw. (ECF No. 124.) The undersigned granted the motion to withdraw on June 10, 2019. (ECF No. 142.) SES then filed a *pro se* response to the Notice.[1] (ECF No. 136.) In the *pro se* response, SES states: "Defendants were unaware that non-original copies were provided to attorneys Ballin, Ballin and Fishman." (Id. at 3.) SES also states: "Defendants turned over what was thought to be the original documents from the bank[.]" (Id.) Finally, SES states: "Defendants unknowingly provided Ballin, Ballin and Fishman altered copies of the deposits[.]" (Id.)

SES subsequently retained its present counsel, and a second response to the Notice was filed through counsel on August 9, 2019. (ECF No. 161.) In this response, SES acknowledges that it provided altered checks to Builders: "Defendants, prior to providing copies of the records to their prior counsel, redacted certain information

---

[1]In response to the instant Motion, SES states that Teri Davis submitted the *pro se* response to the Notice of Noncompliance as an email attachment to the court's ECF mailbox. (ECF No. 178 at 3.) SES points out that the defendants did not sign the *pro se* response. (Id.)

4

in the 'memo' section of the deposited checks which would identify
the street address or lot number of the job(s) being paid for with
the check." (Id. at 2.) While SES admits to redacting information
from the checks, it asserts that it did so in good faith, seeking
only to keep confidential information out of the hands of a
business competitor, Builders. (Id. at 3-4.) The response states
as follows:

> Defendants redacted the information out of their concern
> that the information, particularly as to job site, would
> enable the Plaintiff to ascertain square footage of the
> job and determine, based on the customer's payment,
> SES's job pricing to SES's customers. As SES's pricing
> information is confidential, Defendants were concerned
> that such information would give Builders an unfair
> competitive advantage.

(Id. at 4.) SES provided unredacted copies of the bank records in
question contemporaneously with filing its response. (Id.)

On October 24, 2019, the undersigned held a hearing on the
Notice of Noncompliance, at which time the undersigned authorized
Builders to submit a motion for sanctions based on its allegations.
Builders filed the instant Motion for Sanctions on November 8,
2019. (ECF No. 176.) Builders also submitted a side-by-side
comparison of the fifty-four altered checks alongside the
originals. (ECF No. 177.) According to Builders, the checks
initially produced by SES consisted of "ten blurry check images
per page in hard copy form," on which "alterations and redactions
are not apparent to the naked eye." (ECF No. 176 at 5.) It was not

until the production of documents from the All-In-One computer, which included copies of five check images from August 2017, that Builders was able to compare the check images to the corresponding originals and discover the alterations. (Id. at 5-6.) When provided with originals of the check images, Builders discovered fifty-four of the checks had been altered when initially produced. (Id.)

On approximately twenty-four of the checks, SES removed invoice numbers.[2] On approximately twenty-four of the checks, defendants removed lot numbers from the memo lines.[3] Defendants also removed addresses and other property identifiers from the memo lines of approximately twenty checks.[4] Defendants removed the words "foam" or "insulation" from the memo lines of approximately seven checks.[5] Defendants also removed pricing information from the memo lines of approximately ten checks.[6]

---

[2]See Check Nos. 3240, 1095, 1069, 3457, 4914, 1056, 1115, 1127, 17862, 144, 1134, 18157, 148, 1254, 1153, 12536, 1287, 1245, 1465, 5863, 1213, 1339, 2032, & 1010. (ECF No. 177.)

[3]See Check Nos. 2389, 2498, 2767, 3240, 3565, 3644, 1028, 3750, 1095, 2643, 4786, 3457, 4838, 4914, 5052, 5088, 1134, 5287, 5434, 5595, 5742, 5813, 5863, & 6002. (ECF No. 177.)

[4]See Check Nos. 2389, 2498, 1767, 1028, 1069, 2643, 170, 1056, 1115, 1127, 144, 1052, 1134, 1014, 5434, 186, 5872, 5884, 2032, & 5511. (ECF No. 177.)

[5]See Check Nos. 8487, 8742, 1177, 1014, 1172, 1339, & 1034. (ECF No. 177.)

[6]See Check Nos. 3457, 3565, 3644, 3750, 4838, 5052, 5088, 5287, 5863, & 6002. (ECF No. 177.)

According to Builders, SES used a "sophisticated process" of redaction "to make it appear as if nothing had been altered on the checks." (Id. at 6.) None of the checks contain the word "redacted" or have information blacked out in such a manner that would make the redaction apparent. Rather, the checks appear as though they have not been altered in any way. Builders contends "this involved cutting, copying, pasting, manipulating the check image itself to recreate a horizontal memo line, while removing relevant information altogether to make it appear as if nothing had been altered." (Id.) Upon the undersigned's review of a side-by-side comparison of the original and altered checks, it appears as though approximately twenty-five of the checks were altered in such a way that required defendants to remove text crossing below the memo line, meaning defendants had to either redraw the memo line or take great care to make it appear undisturbed.[7]

SES filed a response to Builders' Motion for Sanctions on November 21, 2019. (ECF No. 178.) According to SES, "[p]rior to providing copies of the records to their prior counsel, Teri Davis redacted certain information in the 'memo' section of the deposited checks which would identify the street address or lot number of the job(s) being paid for with the check." (Id. at 2.) According

---

[7]See Check Nos. 4786, 2643, 1095, 1069, 5088, 8742, 1115, 144, 1052, 1134, 1177, 1014, 148, 5434, 1153, 1172, 5742, 5872, 5884, 5863, 1339, 2032, 6002, 1034, & 1010. (ECF No. 177.)

to SES, Teri Davis redacted the information out of concern that Builders, as a business competitor, would be able to use the information to gain an unfair competitive advantage. (Id. at 4.) SES reiterated its "concern that the [redacted] information, particularly as to job site, would enable [Builders] to ascertain square footage of the job and attempt to determine, based on the customer's payment, SES's job pricing to SES's customers." (Id.) SES also noted that while the Davises understood that a Protective Order was in place, they did not understand that the order precluded Builder's counsel from sharing information with its client. (Id.) Moreover, SES voiced concerns about whether Builders has adhered to the Protective Order, "based on SES's dealings with common suppliers it shares with Builders during the course of this litigation." (Id. at 4-5.)

## II. CONCLUSIONS OF LAW

### A. Authority of Magistrate Judge to Impose Rule 37 Sanctions

As a preliminary matter, the court will address its authority to rule on the instant Motion by order rather than report and recommendation. Magistrate judges generally have authority to enter orders regarding non-dispositive pre-trial motions but must submit report and recommendations for dispositive motions. See 28 U.S.C. § 636; Fed. R. Civ. P. 72. There is little debate as to whether a magistrate judge can enter an order imposing monetary sanctions on a party under Rule 37. See New London Tobacco Mkt.,

Inc. v. Ky. Fuel Corp., No. 6:12-CV-91-GFVT-HAI, 2016 U.S. Dist. LEXIS 96712, at *1 n.1 (E.D. Ky. Mar. 16, 2016) ("Ordinarily, an award of attorneys' fees under Rule 37 is a non-dispositive matter that may be finally decided by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A).") (citing Starcher v. Corr. Med. Sys., Inc., 144 F.3d 418, 421 (6th Cir. 1998) *aff'd sub nom.* Cunningham v. Hamilton Cty., Ohio, 527 U.S. 198 (1999) (considering a magistrate judge's award of attorneys' fees under Rule 37)); see also Brown v. Tellermate Holdings Ltd., No. 2:11-CV-1122, 2015 WL 4742686, at *1 (S.D. Ohio Aug. 11, 2015) ("An award of attorneys' fees for discovery misconduct is not dispositive of a claim or defense and is therefore reviewed under Rule 72(a)'s 'clearly erroneous or contrary to law' standard.") (citing Estates of Ungar & Ungar ex rel. Strachman v. Palestinian Auth., 325 F. Supp. 2d 15, 25 (D.R.I. 2004) *aff'd sub nom.* Ungar v. Palestine Liberation Org., 402 F.3d 274 (1st Cir. 2005); Baker v. Peterson, 67 F. App'x 308, 311 (6th Cir. 2003) (per curiam) (citing Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458 (10th Cir. 1988), for the proposition that "the magistrate's imposition of attorney fees as a discovery sanction is reviewed under the 'clearly erroneous or contrary to law' standard")); Zang v. Zang, No. 1:11-CV-884, 2014 WL 5426212, at *4 (S.D. Ohio Oct. 22, 2014) ("With few exceptions, orders concerning pre-trial discovery matters including the imposition of monetary sanctions for violations under Rule 37 are considered to be non-

dispositive.") (citing <u>Nance v. Wayne County</u>, 264 F.R.D. 331 (M.D. Tenn. 2009); <u>Sutton v. United States SBA</u>, 92 F. App'x 112, 120 (6th Cir. 2003) (motion for discovery sanctions is "not excepted in subparagraph (A) or elsewhere referenced in §636(b)(1)(B)" and therefore a magistrate judge can determine a Rule 37 sanctions motion); <u>Universal Health Group v. Allstate Ins. Co.</u>, 703 F.3d 953 (6th Cir. 2013)(series of non-dispositive sanctions imposed by order by magistrate judge, prior to report and recommendation that recommended sanction of dismissal for continued violations); <u>LeMasters v. Christ Hospital</u>, 791 F. Supp. 188 (S.D. Ohio 1991) (partially modifying but affirming "nondispositive" magistrate judge order imposing sanction of $500 per day for tardy discovery production)). It is worth noting that motions for sanctions under Rule 37 differ from motions for sanctions under Rule 11, which the Sixth Circuit consider to be dispositive. <u>See</u> <u>Bennett v. General Caster Serv. of N. Gordon Co.</u>, 976 F.2d 995, 997 (6th Cir. 1992).

The question thus becomes whether the request for relief in the form of a default judgment affects the authority of the magistrate judge to determine a Rule 37 motion for sanctions. "There appears to be a split in authority on whether a magistrate judge should provide a report and recommendation to a district judge on a Fed. R. Civ. P. 37 motion for sanctions where, as here, the relief sought is dispositive (e.g., default judgment)." <u>Coach, Inc. v. Dequindre Plaza, L.L.C.</u>, No. 11-cv-14032, 2013 WL 2152038,

at *2 n.1 (E.D. Mich. May 16, 2013) (citing Bell-Flowers v. Progressive Ins. Co., No. 04-3026, 2005 WL 3434818, at *1, 2 n.1 (W.D. Tenn. Dec. 13, 2005) (Pham, M.J.)). Courts are divided on the issue of "whether the sanction chosen by the magistrate judge, rather than the sanction sought by the moving party, governs the magistrate judge's authority over the motion." Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc., No. 16-cv-13456, 2018 WL 5098784, at *3 (E.D. Mich. Oct. 19, 2018) (internal quotation marks omitted). Some courts have addressed such motions via report and recommendation. See Coach, Inc., 2013 WL 2152038, at *2 n.1 (collecting cases). However, "[t]he majority of courts to consider the issue have concluded that when a party brings a motion for discovery sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the moving party, governs the magistrate judge's authority over the motion." Bell-Flowers, 2005 WL 3434818, at *1, 2 n.1 (citing Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 6 (1st Cir. 1999); Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519 (10th Cir. 1995); Steele v. Costco Wholesale Corp., No. 03-0713, 2005 U.S. Dist. LEXIS 8348, at *4-5 (E.D.N.Y. May 6, 2005) (unpublished); Segal v. L.C. Hohne Contractors, Inc., 303 F.Supp. 2d 790, 793-94 (S.D. W. Va. 2004)).

Other magistrate judges in the Sixth Circuit have followed Bell-Flowers. See Summit Assets, LLC v. O'Malley, No. 11-12327, 2012 WL 13008759, at *1 n.1 (E.D. Mich. July 31, 2012) ("While the

Plaintiffs seek dispositive relief under Rule 37 (i.e., a default judgment), they also request alternative, non-dispositive discovery sanctions, including costs and attorney fees, and 'any other sanctions this Court deems to be fair and just under the circumstances.' Because I am denying a default judgment (albeit without prejudice) and instead ordering non-dispositive relief, I am entering an order pursuant to 28 U.S.C. § 636(b)(1)(A), rather than issuing a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). In a Rule 37 motion, and particularly one that requests alternative relief, it is the relief granted, not the relief sought that determines which clause of § 636(b)(1) applies."); Sildack v. Corizon Health, Inc., No. 11-12939, 2013 WL 1316707, at *1 n.1 (E.D. Mich. Mar. 29, 2013) ("Although the motions are titled 'motions to dismiss,' the relief I am granting is non-dispositive. I therefore proceed by Order under 28 U.S.C. § 636(b)(1)(A), rather than Report and Recommendation under 28 U.S.C. § 636(b)(1)(B)."); Goode v. Mercy Mem'l Hosp., No. 11-10037, 2014 WL 7369926, at *1 n.1 (E.D. Mich. Dec. 29, 2014) ("Although the motion is titled a 'motion to dismiss,' this matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A), a motion for discovery sanctions is not one excepted from coverage under 28 U.S.C. § 636(b)(1)(A), and the relief granted here is non-dispositive. Thus, the undersigned proceeds by Order under 28 U.S.C. § 636(b)(1)(A) rather than Report and

Recommendation under 28 U.S.C. § 636(b)(1)(B)."); <u>Arabbo v. City of Burton</u>, No. 13-11331, 2015 WL 3403851, at *1 n.1 (E.D. Mich. May 26, 2015) ("Although the motion is titled 'motion to dismiss,' the relief I am granting is non-dispositive. I therefore proceed by Order under 28 U.S.C. § 636(b)(1)(A), rather than Report and Recommendation under 28 U.S.C. § 636(b)(1)(B)."); <u>Thurmond v. City of Southfield</u>, No. 15-13167, 2017 U.S. Dist. LEXIS 39360, at *2 n.1 (E.D. Mich. May 26, 2017) ("Although the motion is framed as a 'motion to dismiss,' I am not granting dispositive relief. I therefore proceed by Order under 28 U.S.C. § 636(b)(1)(A), rather than Report and Recommendation under 28 U.S.C. § 636(b)(1)(B)."); <u>Catrinar v. Wynnestone Cmtys. Corp.</u>, No. 14-11872, 2017 U.S. Dist. LEXIS 161648, at *1 n.1 (E.D. Mich. Sep. 30, 2017) ("Although Plaintiff requests a default judgment as an alternative sanction under Fed. R. Civ. P. 37, the relief I am granting is non-dispositive. I therefore proceed by Order under 28 U.S.C. § 636(b)(1)(A), rather than Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).").

The undersigned concludes that, as previously decided in <u>Bell-Flowers</u>, it is the sanction selected by the magistrate judge rather than the sanction requested by the moving party that governs whether a Rule 37 motion qualifies as dispositive or

nondispositive.[8] To conclude otherwise would allow the moving party
to improperly dictate the authority of the magistrate judge and
manipulate the standard of review. Segal, 303 F.Supp. 2d at 794.
Because the undersigned elects to impose only monetary sanctions
at this time, the motion falls within the scheme of § 636(b)(1)(A),
which permits the undersigned to proceed by order rather than
report and recommendation.

## B.    Default Judgment

Builders seeks a default judgment against SES as a result of
defendants "intentionally altering material evidence." (ECF No.
176-1 at 9-10.) Under Rule 37(b)(2) of the Federal Rules of Civil
Procedure, a district court may sanction parties who fail to obey
discovery orders in a number of ways, including dismissal of the
action or rendering a default judgment against the disobedient
party. Fed. R. Civ. P. 37(b)(2)(A)(v)-(vi). The dismissal of an
action for non-compliance with a discovery order under Rule 37 is

---

[8]While a motion for default judgment under Rule 55 is dispositive,
Callier v. Gray, 167 F.3d 977, 981 (6th Cir. 1999), such a motion
is substantially different and substantively distinguishable from
a motion for sanctions under Rule 37. See Segal, 303 F.Supp. 2d at
794 ("Federal Rule of Civil Procedure 37(b)(2) gives this court
power to impose any sanction that is just, with default judgment
being the most severe sanction. Although the plaintiff may ask the
court to impose the most severe of sanctions, it is for the court
to decide which sanctions, if any, is appropriate."). Unlike a
motion for default judgment under Rule 55, "a motion for 'default
judgment' [under Rule 37] based on alleged discovery violations is
nothing more than an optimistically labeled motion for sanctions."
Id.

a sanction of "last resort," one which a court may impose only when "a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault.'" Peltz v. Moretti, 292 F. App'x 475, 478 (6th Cir. 2008) (quoting Reg'l Refuse Sys. v. Inland Reclamation Co., 842 F.2d 150, 153-54 (6th Cir. 1988)). The same is true for entry of a default judgment as a discovery sanction under Rule 37. Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1073 (6th Cir. 1990) ("Just as dismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault, so, too, is entry of default judgment.") (internal quotation marks and citations omitted). The court considers four factors when deciding whether to impose the sanction of dismissal or default judgment under Rule 37:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor . . . is whether less drastic sanctions were first imposed or considered.

Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997) (citing Reg'l Refuse Sys., 842 F.2d at 154-55; Bass v. Jostens, Inc., 71 F.3d 237, 241 (6th Cir. 1995); Bank One of Cleveland, 916 F.2d at 1073); see also Stamtec, Inc. v. Anson, 195 F. App'x 473, 478-79

(6th Cir. 2006) (restating the four-factor test in reviewing default judgment as a discovery sanction under Rule 37). None of these factors is dispositive. Barron v. Univ. of Mich., 613 F. App'x 480, 484 (6th Cir. 2015).

1. First Factor

The first factor is whether a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault. Freeland, 103 F.3d at 1277. In seeking default judgment as a discovery sanction, willfulness or bad faith "requires a clear record of delay or contumacious conduct." Carpenter v. City of Flint, 723 F.3d 700, 704 (6th Cir. 2013). "Contumacious conduct means 'behavior that is perverse in resisting authority and stubbornly disobedient.'" Phipps v. Accredo Health Group, Inc., No. 2:15-cv-02101-STA-cgc, 2017 WL 685579, at *4 (W.D. Tenn. Feb. 21, 2017) (quoting Carpenter, 723 F.3d at 704-05). The purportedly wrongful conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [the] conduct on those proceedings." Carpenter, 723 F.3d at 705 (quoting Tung-Hsiung Wu v. T.W. Wang, Inc., 420 F.3d 641, 643 (6th Cir. 2013)). According to Builders, the conduct of SES throughout the discovery process demonstrates willfulness and bad faith. (ECF No. 176-1 at 10.) Builders points to the fact that SES failed to comply with the May 1, 2019 order after representing to the court that it had

16

requested bank records from Independent Bank and intended to produce them to Builders. (Id.)

According to SES, this case does not reflect a clear record of contumacious conduct, although SES no longer disputes producing altered records. (ECF No. 178 at 4-6.) SES contends that its reasons for doing so, even if misguided, do not rise to the level of contumacious conduct. (Id.) SES points out that Builders has had the unredacted records it requested since August 9, 2019. (Id.) SES states that Builders' argument is based on conjecture regarding the "sophistication" of SES's redaction efforts. (Id.) According to SES, "[t]he record does reflect that [the Davises] implicitly acknowledged altering the records in the Pro Se June 4 Response and their concern over protecting SES's proprietary information." (Id. at 6.)

There is no way the June 4 *pro se* response can be reasonably construed as an acknowledgement by the Davises that they altered the checks. The Davises explicitly state in their response: "Defendants were unaware that non-original copies were provided to attorneys Ballin, Ballin and Fishman." (ECF No. 136 at 3.) The Davises also state: "Defendants turned over what was thought to be the original documents from the bank[.]" (Id.) Finally, the Davises state: "Defendants unknowingly provided Ballin, Ballin and Fishman altered copies of the deposits[.]" (Id.) There is nothing in the *pro se* response to suggest that the Davises "implicitly

acknowledged" altering the records they produced. Rather, the Davises misrepresented in the *pro se* response that they were unaware of producing altered documents.

Builders points to the "sophisticated" means of redaction, which the Davises state is conjectural. Whether sophisticated or not, it is clear to the court that the alterations were done carefully. Approximately twenty-five checks had text removed that extended below the memo line. Teri Davis removed this information in such a way that the memo line appears undisturbed. In order to accomplish this, Teri Davis must have either removed the information extremely carefully or removed and redrawn the memo line onto each check so it would appear undisturbed. Either way, it evidences a deliberate effort to remove information in a manner that would not appear obvious to the naked eye. Moreover, Teri Davis submitted a response to Builders' Notice of Noncompliance that explicitly stated the Davises did not know they had turned over altered checks to their counsel at the time. It is entirely unreasonable to believe that Teri Davis could have unknowingly engaged in the careful redaction of the checks produced by SES. On the contrary, the record clearly demonstrates that the Davises acted with "an intent to thwart judicial proceedings [and] a reckless disregard for the effect of [their] conduct on those proceedings." See Carpenter, 723 F.3d at 705. The Davises provided

Builders with altered checks and then tried to hide it.[9] This clearly qualifies as willful conduct committed in bad faith. This factor weighs strongly in favor of a default judgment.

2. Second Factor

The second factor is whether the adversary was prejudiced. Freeland, 103 F.3d at 1277. "A defendant is prejudiced by a plaintiff's dilatory conduct if the defendant is 'required to waste time, money, and effort in pursuit of cooperation which [the non-compliant party] was legally obligated to provide.'" Carpenter, 723 F.3d at 707 (quoting Harmon v. CSX Transp., 110 F.3d 364, 368 (6th Cir. 2013)). Builders claims it suffered prejudice because SES possessed "all of the most critical documents" relating to Builders' claims. (ECF No. 176-1 at 10-11.) According to Builders, SES had "exclusive control of the supporting records which would allow Builders Insulation to not only easily calculate its damages from [SES's] conduct, but also potentially identify others with knowledge of [SES's] scheme." (Id. at 11.) According to Builders, "the property address was the primary way Builders Insulation could cross-reference checks to SES projects for which Builders Insulation provided labor and material." (ECF No. 176-1 at 7.) Builders contends that SES knew revealing the property address

_____

[9]It must be noted that the record contains nothing to suggest that the Davises' current or former counsel had knowledge of or participated in this misconduct.

relevant to each check would enable Builders to cross reference that check with its account statement to SES to find the corresponding purchase order. (Id.) This prevented Builders from seeing the amount SES billed and collected related to the properties that Builders worked on. (Id.) Without this information, according to Builders, it is impossible to determine whether the monetary amounts billed and collected for any given job match, as SES has no copies of any of the invoices sent to its customers. (Id.) According to Builders, identifying the property corresponding to each check "is the only way to connect the amounts paid to SES and the amounts SES paid to Builders[.]" (Id.)

SES, on the other hand, argues that Builders cannot demonstrate that it sustained any lasting prejudice, as SES provided non-redacted copies of the bank deposits following Builders' Notice of Noncompliance. (ECF No. 178 at 6-7.) As SES points out, Builders has had unredacted copies of the deposit checks since August 9, 2019. (Id. at 7.) SES also notes that Builders has always had the ability to subpoena such documents directly from the bank. (Id.) However, SES cannot dispute that its conduct required Builders to spend "time, money, and effort in pursuit of cooperation which [SES] was legally obligated to provide." See Carpenter, 723 F.3d at 707. Ultimately, Builders was prejudiced by SES, although the prejudice to Builders' case was later rectified. This factor weighs in favor of default judgment.

3.   <u>Third Factor</u>

The third factor is whether the party was warned that failure to cooperate could lead to the sanction. <u>Freeland</u>, 103 F.3d at 1277. Builders argues that SES was "clearly on notice" that its conduct during the discovery process could lead to sanctions. (ECF No. 176-1 at 11.) As Builders points out, SES faced several motions for sanctions during these proceedings and also appeared at hearings regarding the ongoing discovery disputes. (<u>Id.</u>)

SES argues that it has had no prior warning from the court that failure to comply with the Court's May 1, 2019 order could result in a default judgment against SES. (ECF No. 178 at 7.) The May 1, 2019 order itself did not contain this warning. (ECF No. 118.) SES also points out that while Builders previously sought sanctions, it did not previously seek a default judgment. (ECF No. 178 at 7.) SES also points out that the court has not imposed any sanctions on SES in this case. (<u>Id.</u>) Ordinarily, this factor would weigh strongly against the sanction of default judgment because the court "has not warned [the Davises] that a failure to cooperate in discovery could lead to the sanction of default judgment." <u>Phipps</u>, 2017 WL 685579, at *5. However, this case involves far more alarming conduct than a mere "failure to cooperate" by the Davises. Because the Davises engaged in bad faith and contumacious conduct, the third prong of this inquiry affords them little protection here. See <u>Harmon</u>, 110 F.3d at 367 ("Where a plaintiff

has not been given notice that dismissal is contemplated, a district court should impose a penalty short of dismissal unless the derelict party has engaged in bad faith or contumacious conduct.") (internal quotations marks omitted); see also Universal Health Group, 703 F.3d at 956 (affirming dismissal of complaint where bad faith was found, even though "there was no explicit warning of dismissal").

4.    Fourth Factor

The fourth factor is whether less drastic sanctions were first imposed or considered. Freeland, 103 F.3d at 1277. As default judgment is a sanction of "last resort," the court must consider whether lesser sanctions would maintain the integrity of these proceedings. See Bank One of Cleveland, 916 F.2d at 1073; see also Carpenter, 723 F.3d at 709. While the court has not yet imposed sanctions on SES, Builders has previously requested sanctions twice in this case. (ECF Nos. 49; 76.) Builders argues that any sanctions less than entry of a default judgment are unlikely to impact the Davises' conduct, as they have continuously delayed, changed their testimony, and withheld relevant information. (ECF No. 176-1 at 11.) Builders asserts that such an extreme remedy is necessary not only to punish the Davises and deter them from repeating such behavior but also to deter other litigants from behaving in such a manner. (Id.) Builders emphasizes that the Davises did not satisfy their discovery obligations until the court

required "counsel for SES [to] ensure that the All-In-One computer is searched, and all relevant information contained therein produced[.]" (ECF No. 118.) Builders points out that this production occurred five months after Builders deposed Thom and Teri Davis and after multiple hearings regarding the ongoing discovery disputes. (ECF No. 176-1 at 11-12.)

SES emphasizes that the court has not imposed any sanctions against SES to date, and argues that less drastic sanctions are available and sufficient if the court decides to impose sanctions at all. (ECF No. 178 at 7.) Whether less drastic sanctions will prove sufficient to deter future violations by the Davises remains to be seen. Certainly, the conduct at issue here cannot go unaddressed or be allowed to continue. However, after considering all four factors under <u>Freeland</u>, the court finds that the sanction of a default judgment is not warranted at this time. Accordingly, Builders' request for a default judgment is DENIED.

## C. Attorney's Fees

Additionally, Builders seeks attorney's fees as a sanction. Under Rule 37(b)(2)(C), instead of imposing any of the sanctions listed in Rule 37(b)(2)(A) for failing to comply with a discovery order, such as dismissal or entry of a default judgment, "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances

make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).
Builders contends that defendants "cannot offer any justification
for their behavior." (ECF No. 176-1 at 12.) Builders notes that it
has spent significant time and expense throughout the discovery
process, which Builders attributes to SES's failure to comply with
"basic discovery obligations." (<u>Id.</u>) Accordingly, Builders
requests its costs and fees associated with preparing and
prosecuting its prior Motion to Compel, its Notice of
Noncompliance, and the instant Motion for Sanctions.[10] (<u>Id.</u>)

Builders argues that the only fees incurred as a result of
the redacted checks was the filing of the Notice of Noncompliance.
(ECF No. 178 at 8.) Anything beyond that, SES argues, Builders
took upon itself to incur additional costs in pursuing the
alternate avenues of relief. (<u>Id.</u>) The undersigned is inclined to
follow the mandate of Rule 37(b)(2)(C) by awarding attorney's fees
to Builders for the failure of SES to comply with the court's May
1, 2019 order. Accordingly, the undersigned GRANTS Builders
request for attorney's fees for preparing the instant Motion for
Sanctions and its Notice of Noncompliance, as well as the cost and

_____

[10]Elsewhere in the Motion for Sanctions, Builders seemingly
requests "all fees incurred in discovery since the inception of
the case[.]" (ECF No. 176-1 at 12.) Builders cites no authority to
support the scope of this request, and the undersigned views such
a request as overreaching.

fees associated with Builders' preparation and appearance at the October 24, 2019 hearing.

## D. Depositions

Moreover, Builders requests the opportunity to re-open depositions of the defendants. While the court is not inclined to award default judgment to Builders in this circumstance, the undersigned finds the request to re-open depositions reasonable due to the fact that SES deprived Builders of the opportunity to question the Davises about the altered and withheld documents during their initial depositions. Accordingly, the undersigned is inclined to permit Builders to have the opportunity to re-depose the Davises only on the recent document production of unaltered bank records, as well as the 897 records from the All-in-One computer. The request to re-open depositions as described above is hereby GRANTED. If Builders elects to re-depose the defendants, said depositions should be completed within 30 days of the entry of this order.

### III. CONCLUSION

For the reasons above, Builders' Motion for Sanctions is GRANTED in part and DENIED in part. Within 30 days from the entry of this order, Builders' counsel shall file a declaration setting forth in detail the fees and expenses reasonably incurred as a result of filing the Notice of Noncompliance, the Motion for

Sanctions, and counsel's appearance at the October 24, 2019 hearing.

Defendants are hereby warned that any future abuse of the litigation process or failure to comply with the court's orders may result in default judgment and other sanctions under Rule 37.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

January 17, 2020
Date